# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

**MOUNT VERNON FIRE**
**INSURANCE COMPANY,**

    Plaintiff,

v.

**CASE NO.** _____

**LIEM CONSTRUCTION, INC.;**
**ASHLER OAKS, LLC d/b/a**
**ROUNDTREE APARTMENTS; and,**
**R.F. JONES CONSTRUCTION, LLC**

    Defendants.

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Mount Vernon Fire Insurance Company, through counsel, seeks a declaration to have a policy of insurance which it had issued to the Defendant, Liem Construction, Inc., declared void *ab initio* due to material misrepresentations made in the application for insurance. Alternatively, Mount Vernon Fire Insurance Company seeks a declaration that it has no duty to indemnify or defend any person or entity claiming to be insured by reason of fact that the claims made against them in connection with a particular incident arise from construction activities and work specifically limited or excluded under the subject policy of insurance. For its Complaint for Declaratory Judgment, Mount Vernon Fire Insurance Company states to the Court:

### PARTIES

1.1. Plaintiff, Mount Vernon Fire Insurance Company ("MVFIC"), is a Pennsylvania corporation, with its principal place of business located at 1190 Devon Park Drive, Wayne,

Pennsylvania 19087-2191, and is an insurer admitted to write insurance in the State of Tennessee.

1.2. Defendant, Liem Construction, Inc. ("Liem Construction") is a Tennessee organized and domiciled corporation located at 2704 Erin Lane in Nashville, Tennessee 37221. Its registered agent is Ivan Morales whose address is 5005 Brewer Ct, Apt B, Nashville, Tennessee 37211-5309. Liem Construction can be served with process at either of these addresses or wherever else its registered agent or officers can be found.

1.3. Defendant, Ashler Oaks, LLC d/b/a Roundtree Apartments ("Ashler Oaks"), upon information and belief, is a limited liability company claiming an interest in real property located at 1617 Lebanon Rd in Nashville, Davidson County, Tennessee known as the Roundtree Apartments.

1.4. Defendant, R.F. Jones Construction, LLC ("R. F. Jones"), is a Tennessee limited liability company operating as a contractor and can be served at its principal place of business located at 1741 Highway 41 S., Goodlettsville, TN 37072.

**JURISDICTION AND VENUE**

2.1. Plaintiff brings this action for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

2.2. This Court has jurisdiction to hear this cause pursuant to 28 U.S.C. § 1332 as it is between citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and cost.

2.3. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391 as a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

## GENERAL ALLEGATIONS

3.1. On or about October 30, 2013, Liem Construction submitted a Commercial General Liability Application ("Application") through Graham and Rogers, Inc. seeking liability insurance coverage for interior carpentry and interior painting. A copy of the "Application" is attached hereto as Exhibit "A."

3.2. Based upon the "Application," on or about November 4, 2013, MVFIC issued a liability insurance policy to Named Insured - Liem Construction under Policy No. CL2652113 (the "Policy"). The "Policy" had a term of 12 months beginning on the effective date of November 4, 2013. The expiration date of the "Policy" was to be November 4, 2014. A copy of the "Policy" is attached hereto as Exhibit "B." The "Policy" was subsequently renewed under Policy No. CL2622113A (the "Renewal Policy") with an effective date of November 4, 2014. The "Renewal Policy" was subsequently cancelled for non-payment of premium.

3.3. Defendant, Ashler Oaks has alleged that on or about May 6, 2014, it entered into a contract ("Prime Contract") with Jones for improvements, including roof and balcony repairs, at the Roundtree Apartments. Exhibit "C."

3.4. Jones entered into a subcontract agreement with Liem Construction, pursuant to which Liem agreed to perform some or all of the Work under the Prime Contract. Exhibit "D."

3.5. Ashler Oaks filed suit against Liem Construction and R.F. Jones Construction, LLC in a Tennessee state court action styled *Ashler Oaks, LLC dba Roundtree Apartments v.* R. F. Jones Construction, LLC and *Liem Construction, Inc.,* Docket No. 15-215-II, in the in the Chancery Court of Tennessee for the Twentieth Judicial District at Nashville (the "Underlying Complaint"). A copy of the "Underlying Complaint" is attached hereto as Exhibit "E."

3.6. In the "Underlying Complaint," Ashler Oaks alleges that Liem Construction removed portions of the TPO roof membranes from certain apartment buildings.

3.7. In the "Underlying Complaint" Ashler Oaks alleges that rainfall infiltrated the interior of the buildings causing significant damage as a result of Liem Construction's failure to properly protect the buildings from water intrusion.

3.8. In the "Underlying Complaint" Ashler Oaks alleges that Liem Construction was negligent in its failure to properly protect the buildings from water intrusion after removal of the TPO roof membranes.

3.9. In the "Underlying Complaint" Ashler Oaks seeks compensatory damages for Liem Construction's failure to properly protect the buildings from water intrusion after removal of the TPO membranes.

3.10. On or about April 29, 2015 R.F. Jones filed a Cross-Claim against Liem Construction. A copy of the "Cross-Claim" is attached hereto as exhibit "F"

3.11. In the Cross-Claim R.F. Jones alleges that Jones subcontracted with Liem Construction to perform certain work on the apartments owned by Ashler Oaks.

3.12. In the Cross-Claim, R.F. Jones alleges that Ashler Oaks filed suit against Jones alleging breach of contract and negligence, arising from the work performed by Liem Construction.

3.13. In the Cross-Claim R.F. Jones alleges breach of contract, negligence, indemnity and contribution on the part of Liem Construction in connection with the property damage caused by water intrusion after removal of the TPO membrane by Liem Construction.

3.14. The subcontract entered into between Liem Construction and R.F. Jones does not contain any provisions requiring Liem to indemnify R.F. Jones for any negligence on the part of Liem Construction.

3.15. Liem Construction has made demand on MVFIC that it defend and indemnify it in connection with the claims asserted in the "Underlying Complaint" and "Cross-Claim."

3.16. Subject to a full reservation of all of its rights under the "Policy," MVFIC agreed to provide a defense of Liem Construction to the claims alleged against it in the "Underlying Complaint" and "Cross-Claim".

## THE APPLICATION

4.1. The Application contained the following language:

*Commercial General Liability Application*

*By signing this application you are warranting that all information on this application is true and correct.*

4.2. The "Application" under paragraph **I. General Information** contained the following question.

*Applicant's Name:*

The answer was: *"Liem Construction, Inc."*

4.3. The "Application" for insurance was for coverage for the Classifications:

*Carpentry – Interior*   Code No.*:* 91341 and
*Painting interior – building or structures* Code No. *9*8305

4.4. This classification contemplated that the applicant's business was limited to painting and carpentry work on the interiors of buildings and interiors of structures.

4.5. The "Application" contained the following question under paragraph I **General Information**.

*Has the applicant ever operated under any other name or name?*

*a. If yes, what names(s)? _____*

*b. If yes, what was the reason for the change? _____*

The answer supplied was: *"No"*

4.6. The "Application" contained representations that Liem engaged in:

*No demolition work (except incidental non-load bearing interior work);*
*No rigging work or use of cranes; and,*
*No waterproofing operations.*

4.7. The "Application" under paragraph **V. <u>Additional Eligibility Information</u>** contained the question:

> *Has the Applicant ever or will the applicant retain any work in any classifications other than those listed above?*

The answer supplied to this question was *"No."*

4.8. Above the signature line on page 4 of 4 the "Application" contained the following statement:

> **Applicant's Warranty Statement***: I warrant that the information provided in this Application, and any amendments or modifications to this Application are true and correct. I acknowledge that the information provided in this Application Is material to acceptance of the risk and the issuance of the requested policy by Company. I agree that any claim, incident, occurrence, event or material change in the Applicant's operation taking place between the date this application was Signed and the effective date of the insurance policy applied for which would render inaccurate, untrue or incomplete, any information provided in this Application, will immediately be reported in writing to the Company and the Company may withdraw or modify any outstanding quotations and/or void any authorization or agreement to bind the insurance. Company may, but is not required, to make investigation of the information provided in this Application. A decision by the Company not to make or to limit such investigation does not constitute a waiver or estoppel of Company's rights.*
>
> *I acknowledge that this Application is deemed incorporated by reference in any policy issued by Company In reliance thereon whether or not the Application is attached to the policy.*
>
> *I acknowledge and agree that a breach of this WARRANTY STATEMENT is grounds for Company to declare void any policy or policies issued in reliance thereon and/or deny any claim(s) for coverage thereunder.*

4.9. The "Application" was signed by *Luis Espinoza, President* on October 30, 2013.

4.10. MVFIC relied upon the "Application" and the answers to questions and statements contained in the "Application" as being truthful, correct, and accurate.

4.11. Based upon the "Application" completed and signed by Luis Espinoza, MVFIC agreed to provide insurance coverage for Liem Construction and, accordingly, issued the "Policy."

4.12. It has now come to the attention of MVFIC that the representations made by Liem Construction in the "Application" were not truthful, correct or accurate.

4.13. It has now been determined that Liem Construction engaged work/operations other than interior painting and interior carpentry, including but not limited to, demolition work, waterproofing operations, roofing work, and exterior work and/or exterior remodeling.

4.14. It has now been determined that Liem Construction's work on the property at 1617 Lebanon Road was not consistent with the representations made in the "Application."

4:15. It has now been determined, according to the Tennessee Secretary of State, that Liem Construction, Inc. was previously known as – IVAN LA Construction, Inc. before it filed Articles of Amendment changing its name, address and registered agent on March 20, 2013. IVAN LA Construction Inc. was originally organized on November 19, 2012.

4.16. The submission by Liem Construction of the Application and the information and answers contained therein amounted to material misrepresentations in its "Application" for insurance coverage.

## THE POLICY

5.1. The policy of insurance provides in pertinent part as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES,**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, as follows:

7

Case 3:16-cv-00689   Document 1   Filed 03/29/16   Page 7 of 19 PageID #: 7

1. **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . However, we will have no duty to defend the insured against any "suit" seeking "bodily injury" or "property damage" to which this insurance does not apply. . . .

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

        **(2)**  The "bodily injury" or "property damage" occurs during the policy period; and

2. **Exclusions**

    This insurance does not apply to:

    b.  **Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by the reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)**  That the insured would have in the absence of the contract or agreement; or

    **(2)**  Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in

an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract," and

**(b)** Such attorney fees and litigation expenses are for defense of that Party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**j.     Damage To Property**

"Property damage" to:

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it….

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**6.     Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

9

**SECTION V – DEFINITIONS**

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract;"

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16. "Products-completed operations hazard:"

    a. Includes all "bodily injury" and property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  **(1)** Products that are still in your physical possession, or

  **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times.

   **(a)** When all of the work called for in your contract has been completed.

   **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise completed.

**17.** "Property damage" means:

 **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it……….

5.2. The "Policy" contains Endorsement **CG 21 39 10 93, CONTRACTUAL**

**LIABILITY LIMITATION**, which provides:

> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
>
> **CONTRACTUAL LIABILITY LIMITATION**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
>
> The definition of "insured contract" in the DEFINITIONS Section is replaced by the following:
>
> "Insured Contract" means:
>
> **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by file to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract;"
>
> **b.** A sidetrack agreement;
>
> **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
>
> **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
>
> **e.** An elevator maintenance agreement.

5.3. The "Policy" contains Endorsement **L – 232s (9/05),** entitled

**CLASSIFICATION LIMITATION ENDORSEMENT**, which in relevant part provides:

> *Coverage under this contract is strictly limited to the classification(s) and code(s) listed on the policy Declarations page.*

*No coverage is provided for any classification(s) and code(s) not specifically listed on the Declarations page of this policy.*

5.4. The "Policy" contains Endorsement **L 599 (10-12) ABSOLUTE EXCLUSION FOR POLLUTION, ORGANIC PATHOGEN, SILICA, ASBESTOS AND LEAD WITH A HOSTILE FIRE EXCEPTION** which provides:

> This endorsement modifies insurance provided under the following:
> **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
>
> **ABSOLUTE EXCLUSION FOR POLLUTION, ORGANIC PATHOGEN, SILICA, ASBESTOS AND LEAD WITH A HOSTILE FIRE EXCEPTION**

**SECTION I – COVERAGES, COVERA A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** Paragraph **2. Exclusions, f. Pollution** is deleted in its entirety and replace with the following:

- **f. Pollution, Organic Pathogen, Silica, Asbestos and Lead**
  - **(1)** "bodily injury" or "property damage"; or
  - **(2)** Diminishing or lessening in value of property or for damages from the taking, use or acquisition or interference with the rights of others in property or in space; or
  - **(3)** Loss, cost or expense, including but not limited to payment for investigation or defense, fines and penalties, arising out of any governmental or any private party action, that an insured or any other party test for, monitor, clean up, remove, contain, mitigate, treat, detoxify or neutralize or in any way respond to or assess the actual or alleged effects of "pollutants", "organic pathogens", "silica", asbestos, or lead;

Arising directly, indirectly, in concurrence with or in any sequence out of the actual, alleged or threatened presence of or exposure to, ingestion, inhalation, absorption, contact with discharge, dispersal, seepage, release or escape of "pollutants", "organic pathogens", "silica", asbestos, or lead, whether or not any of the foregoing are (1) sudden, accidental or gradual in nature; (2) intentional; or (3) expected or intended from the standpoint of the insured.

This exclusion applies even if the "pollutant", "organic pathogen", "silica", asbestos, or lead has a function in, or is used by you in your business, operations, premises, site or location.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:
  - (1) At ay premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or
  - (2) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are

13

performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

This exclusion does not apply to "bodily injury" or "property damage" arising from the consumption of food products intended for human consumption.

"Pollutants" mean[s] any solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or other substance that can be toxic or hazardous, cause irritation to animals or persons and/or cause contaminating to property and the environment including smoke, vapor, soot, fumes, acids, alkalis, chemicals toxic materials, "volatile organic compound" and gases therefrom, radon, combustion byproducts and waste. Specific examples identified as pollutants include, but are not limited to, diesel, kerosene, and solvents…tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals…chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides…and all substances specifically listed, identified, or described by one or more of the following references: **Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances** (1977 and all subsequent editions), **Agency for Toxic Substances And Disease Registry ToxFAQs$^{TM}$, and/or Environmental Protection Agency EMCI Chemical References Complete Index.**

"Silica" means silica in any form and any of its derivatives, including but not limited to silica dust, silicon dioxide, crystalline silica, quartz, or non-crystalline (amorphous) silica.

"Volatile organic compound" means any compound which discharges organic gases as it decomposes or evaporates, examples of which include but are not limited to formaldehyde, pesticides, adhesives, construction materials made with organic chemicals, solvents, paint, varnish and c leaning products.

"Waste" means any property intended to be disposed, recycled, reused or reclaimed by the owner or user thereof.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproduct such as mycotoxin, mildew, or biogenic aerosol.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

     5.5.    The Classifications and Codes listed on the Declarations page of the "Policy" are *Carpentry – interior, Code No.: 91341* and *Painting - interior - building or structures, Code No.: 98305.*

5.6. The claims in the "Underlying Complaint" and "Cross-Claim" arise from Liem Construction contracting and engaging in exterior remodeling and work other than interior painting or interior carpentry. Such operation and work does not fall within the Classification description and Code which is listed on the Declarations page of the "Policy" and which was described in the "Application."

## COUNT I – RESCISSION

6.1. All allegations and averments in paragraphs 1.1 through 5.6 are adopted here and now as though set forth fully verbatim.

6.2. Given the fact that Liem Construction engaged in work/operations other than interior painting or interior carpentry, Liem Construction made misrepresentations in the "Application" it submitted to MVFIC.

6.3. Given the fact that Liem Construction engaged in work/operations other than interior painting or interior carpentry, Liem Constructions' failure to disclose these facts and circumstances constitutes a misrepresentation in the procurement of insurance coverage.

6.4. Given the fact that Liem Construction operated under another name prior to the date of the "Application," Liem Construction's failure to disclose this fact constitutes a misrepresentation in the procurement of insurance coverage.

6.5. The misrepresentations in the "Application" were known by Liem Construction to be false when made. These misrepresentations in the "Application" were made with actual intent to deceive.

6.6. Liem Construction's misrepresentations in the "Application" were material misrepresentations which increased the risk of loss to MVFIC.

6.7. Had Liem Construction fully and truthfully completed the "Application," MVFIC never would have agreed to issue the insurance coverage as set forth in the "Policy."

6.8. Based upon the material misrepresentations made by Liem Construction in the "Application," the "Policy" issued by MVFIC should be declared void *ab initio* pursuant to Tennessee Code Annotated § 56-7-103. MVFIC, therefore, would have no duty to defend Liem Construction or any other person or entity under the "Policy" or any of the coverages provided therein.

6.9. The total annual gross premium charged for the coverage provided under the "Policy" exclusive of brokerage fees and surplus lines taxes was $557.00. The total amount of earned premium paid under the "Renewal Policy" was $208.00.

6.10. Upon a finding that the "Policy" is void *ab initio*, MVFIC will tender the return of $765.00 which is the amount of premiums it was paid by Liem Construction for the "Policy" and "Renewal Policy".

## COUNT II – NO COVERAGE

7.1. All allegations and averments in paragraphs 1.1 through 6.10 are adopted here and now as though set forth fully verbatim.

7.2. By the terms of the Classification Limitation Endorsement the claims brought against Liem Construction in connection with the "Underlying Complaint" and "Cross-Claim" are not covered by the "Policy."

7.3. Because of the Classification Limitation Endorsement, MVFIC is entitled to a declaration that there is no coverage under the "Policy" for any damages or injuries alleged by Ashler Oaks in the "Underlying Complaint."

7.4. The subcontract entered into between Liem Construction and R.F. Jones is not an "insured contract" pursuant to the terms and definitions contained in the "Policy" and the Endorsements thereto.

7.5. There is no coverage under the "Policy" for any claims and damages alleged

in the "Cross-Claim" pursuant to the terms of the "Policy" including but not limited to the exclusions for contractual liability and the Endorsement for Contractual Liability Limitation as set forth in the "Policy."

7.6     To the extent the "Underlying Complaint" or "Cross-Claim" allege claims that any work by Lien Construction had to be restored, repaired, replaced then there is no coverage under the "Policy" pursuant to the terms and conditions set forth therein.

7.7     To the extent the "Underlying Complaint" or "Cross-Claim" allege any "property damage" or diminished value or any loss, costs,or expense due to "organic pathogens" or "pollutants" as defined in the "Policy", then there is no coverage for such alleged damages pursuant to the terms and conditions of the "Policy".

## DECLARATORY RELIEF

8.1.    All allegations and averments in paragraphs 1.1 through 7.6 are adopted here and now as though set forth fully verbatim.

8.2.    MVFIC's rights under the "Policy" have been called into question and by this Complaint MVFIC seeks a declaration of its rights and obligations with respect to the aforesaid "Underlying Complaint" and "Cross-Claim."

8.3.    MVFIC desires a finding by this Court that under the "Policy," MVFIC has no duty to defend or indemnify any person or entity in connection with the "Underlying Complaint" and "Cross-Claim."

8.4.    There exists an actual controversy between MVFIC and the Defendants in the "Underlying Complaint" and "Cross-Claim" concerning their rights and duties in that MVFIC contends that it does not have a duty to defend anyone against the claims made in the "Underlying Complaint" and "Cross-Claim" and that it does not have to indemnify anyone for any damages arising from the "Underlying Complaint" and "Cross-Claim" filed by Ashler Oaks

and R.F. Jones.

8.5. There is a bona fide actual present and practical need for the declaration that no coverage exists under the "Policy" and a determination of the rights and obligations of MVFIC.

8.6 In bringing this Complaint for Declaratory Relief, should any of the underlying claims, allegations or suits be amended, or should any other claims be asserted in connection with the matters that form the basis of the "Underlying Complaint" or "Cross-Claim" , MVFIC reserves the rights to amend this Complaint for Declaratory Relief to assert any and all rights under the "Policy", all of which MVFIC continues to reserve.

WHEREFORE, Plaintiff, MVFIC respectfully prays that:

A. Process issue and be served upon Defendants requiring them to Answer this Complaint and, thereafter, that this matter be advanced on the Court's calendar for a speedy hearing pursuant to Rule 57 of the Federal Rules of Civil Procedure;

B. For a declaration that the "Policy" be declared void *ab initio* pursuant to Tennessee Code Annotated § 56-7-103;

C. For a declaration that MVFIC is not obligated to defend any person or entity in connection with the "Underlying Complaint" and "Cross Claim" or the incident which forms the basis for the "Underlying Complaint" and "Cross-Claim;"

D. MVFIC has no duty to indemnify any person or entity in connection with any verdicts, judgments, or settlements in the "Underlying Complaint" and "Cross-Claim" or the incident which forms the basis for the "Underlying Complaint" and "Cross-Claim;" and

E. MVFIC further requests that it be awarded its costs in this cause and

such other and further relief to which it may be entitled under the facts and circumstances of this cause.

                Respectfully submitted,

                SHUTTLEWORTH WILLIAMS, PLLC

BY:   /s/ Christopher H. Crain
      MICHAEL G. DERRICK (#14820)
      CHRISTOPHER CRAIN (#19900)
      mderrick@shuttleworthwilliams.com
      ccrain@shuttleworthwilliams.com
      22 North Front Street, Suite 850
      Memphis, Tennessee 38103
      (901) 526-7399

      ROBERT W. BRILEY (#18560)
      rbriley@shuttleworthwilliams.com
      401 Church Street, Suite 2700
      Nashville, TN 37219
      (615) 833-3390

      **Attorneys for Plaintiff**