**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **MOUNT VERNON FIRE INSURANCE** ) | |
| **COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **NO. 3:16-cv-00689** |
| ) | **CHIEF JUDGE CRENSHAW** |
| **LIEM CONSTRUCTION, INC., R.F.** ) | |
| **JONES CONSTRUCTION, LLC, and** ) | |
| **ASHLER OAKS, LLC d/b/a** ) | |
| **ROUNDTREE APARTMENTS,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Mount Vernon Fire Insurance Company ("MVFIC") has filed a Motion for Summary Judgment. (Doc. No. 36.) Defendant Ashler Oaks, LLC d/b/a Roundtree Apartments ("Ashler Oaks") has filed a Response (Doc. No. 46), and MVFIC has filed a Reply (Doc. No. 48). For the reasons discussed below, MVFIC's motion will be **GRANTED** as to Ashler Oaks. The other Defendants in this matter, R.F. Jones Construction, LLC, ("Jones") and Liem Construction, Inc., ("Liem") have failed to file responsive proceedings and are currently subject to Entries of Default. (Doc. No. 22; Doc. No. 23.) MVFIC will be **ORDERED** to file a Rule 55(b)(2) motion for entry of default judgment as to the those Defendants within fourteen days of the issuance of the Order accompanying this Opinion.

<u>**I. BACKGROUND**</u>

Ashler Oaks is a limited liability company with an interest in a piece of Nashville real property known as "Roundtree Apartments" ("Roundtree"). (Doc. No. 47 at ¶ 2.) Jones entered into a contract with Ashler Oaks in May of 2014 ("Prime Contract"), pursuant to which Jones was

to perform certain improvements, including roof repairs, to Roundtree buildings. (Id. at ¶ 4.) Jones, in turn, allegedly entered into a subcontract with Liem to perform some or all of the work under the Prime Contract. (Doc. No. 1 at ¶ 3.4.)

MVFIC is a Pennsylvania-based insurer from whom Liem purchased a commercial general liability policy ("Policy"). (Doc. No. 1 at ¶¶ 1.1, 3.2; Doc. No. 18 at ¶¶ 1, 6.) MVFIC contends that it originally issued the policy pursuant to a Commercial General Liability Application ("Application") dated October 30, 2013, and submitted on behalf of a company identified as "LIEM CONSTRUCTION, INC." (Doc. No. 1-1.) The Application's first section asks, "Has applicant ever operated under any other name or names?" A box answering "No" is marked. (Id. at 1.)

The Application's third section includes a table identifying two "classifications": "Carpentry – interior" and "Painting – interior – building or structures." (Id. at 3.) Later in the Application, the applicant is asked "Has the applicant ever or will the applicant retain any work in any classifications other than those listed above?" and the box next to "No" is marked. (Id.) Under that question, the Application includes a grid from which the applicant can select a number of additional classifications, including "Roofing." The applicant is instructed to "place an 'X' next to each classification representing any work you have done in the past or will perform in the [future]." No "X" is placed next to "Roofing." (Id.)

Above the Application's signature lines is an "Applicant's Warranty Statement" in which the applicants warrants the veracity of the information in the Application and "acknowledge[s] and agree[s] that a breach of this WARRANTY STATEMENT is grounds for [MVFIC] to declare void any policy or policies issued in reliance thereon and/or deny any claim(s) for coverage thereunder."

(Id. at 4.)  Although the signature on behalf of the applicant is illegible to the Court, MVFIC asserts that it belongs to Liem president Luis Espinoza.  (Doc. No. 1 at ¶ 4.9.)

The Policy itself includes a "Classification Limitation Endorsement" providing that "[c]overage under this contract is strictly limited to the classification(s) and code(s) listed on the policy Declarations page.  No coverage is provided for any classification(s) and code(s) not specifically listed on the Declarations page of this policy."  (Doc. No. 1-2 at 32.)  On a page with the header "COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS," the policy includes the same two classifications included on the Application—"Carpentry – interior" and "Painting – interior – building or structures."  (Id. at 3.)

On February 19, 2015, Ashler Oaks filed suit against Jones and Liem in Davidson County Chancery Court, alleging that, when Liem was performing roof work, it, at Jones's direction, removed a necessary protective membrane without taking appropriate steps to prevent water infiltration, resulting in property damage to Roundtree buildings ("Underlying Action").  (Doc. No. 1-5 at ¶¶ 8–14.)  Ashler Oaks' complaint in the Underlying Action includes a claim for negligence against Liem.  (Id. at ¶¶ 46–51.)  Jones has filed cross claims against Liem in the Underlying Action for breach of contract, negligence, and contribution.  (Doc. No. 47 at ¶ 31.)

On March 29, 2016, MVFIC filed this declaratory judgment action, seeking a declaration that it has no duty to indemnify or defend any party in the Underlying Action.  (Doc. No. 1 at ¶ 8.4.)  Liem and Jones have filed no responsive pleadings in this matter and default was entered against them on June 21, 2016, and July 7, 2016.  (Doc. No. 22: Doc. No. 23.)   On January 25, 2017, MVFIC filed its Motion seeking summary judgment.  (Doc. No. 36.)

# II. ANALYSIS

## A. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Pennington v. State Farm Mut. Auto. Ins. Co., 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. Van Gorder v. Grand Trunk W. R.R., Inc., 509 F.3d 265, 268 (6th Cir. 2007). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the material issue of fact a proper jury question. Id. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. Rodgers, 344 F.3d at 595.

## B. Reliance on Materials from the Underlying Action

As a preliminary matter, Ashler Oaks objects to MVFIC's reliance on an affidavit of Espinoza and interrogatory responses of Liem, both of which arose as discovery in the Underlying Action, not the litigation in this Court. MVFIC counters that, although neither document was produced in this particular case, both are sworn and are no less reliable than other materials on which the Court could rely in considering a motion for summary judgment, such as affidavits.

Rule 56(c)(1)(A) permits a party seeking summary judgment to rely on "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" in the record. "The court and the parties have great flexibility with regard to the evidence that may be used on a [summary judgment] proceeding." Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 538 (4th Cir. 2015) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2721 (3d ed. 1998)). Although summary judgment should be based on admissible evidence, that evidence does not necessarily have to be presented in final, admissible form at the time of the summary judgment motion:

> As amended in 2010, Federal Rule of Civil Procedure 56 provides that parties asserting a genuinely disputed fact need only "cit[e] to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). It then permits a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Once an objection is properly made, the proponent must "show that the material is admissible as presented or . . . explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment.

Mangum v. Repp, No. 15-4292, 2017 WL 57792, at *5 (6th Cir. Jan. 5, 2017); see also Humphreys & Partners, 790 F.3d at 538 (citing 11 James Wm. Moore et al., Moore's Federal Practice § 56.91[2] (3d ed.2015)). For example, "[h]earsay is not generally considered on a motion for summary judgment, but it may be considered 'if the statement could be reduced to admissible evidence at trial or reduced to admissible form.'" Wilson v. Stein Mart, Inc., No. 3:15-CV-01271, 2016 WL 4680008, at *2 (M.D. Tenn. Sept. 7, 2016) (quoting Rymed Tech., Inc. v. ICU Med., Inc., No. 3:10–01067, 2012 WL 4505896, at *5 (M.D. Tenn. Sept. 28, 2012)).

Ashler Oaks has not objected that Espinoza's statements "cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P 56(c)(2), only that MVFIC has failed to

present them in such a form here.  It appears to the Court that Espinoza's recounting of his own business activities could be presented in admissible form at trial, in the form of testimony by Espinoza himself.  The sworn nature of the Chancery Court materials, moreover, renders them comparably reliable to an affidavit, which the Court may consider as a statement of what "the affiant or declarant is competent to testify" at trial.  Fed. R. Civ. P. 56(c)(4).  The Court will therefore consider MVFIC's arguments with the benefit of Espinoza's statements made in discovery in the Underlying Proceeding.

## D. Applicability of the Policy to the Underlying Action

MVFIC presents two arguments that it has no duty under the Policy to indemnify or defend any entity in the Underlying Action: first, that the Policy should be held to be void based on misrepresentations in the Application; or second, that the Policy provides no coverage for the liability at issue in the Underlying Action.

Because Tennessee law "generally favors the validity of insurance contracts," a misrepresentation in an application for insurance is not necessarily fatal to the validity of a policy.  Morrison v. Allen, 338 S.W.3d 417, 428 (Tenn. 2011).  Tenn. Code Ann. § 56-7-103, however, sets forth two situations in which a false statement in an application may cause the policy to be void:

> No written or oral misrepresentation or warranty made . . . in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy . . . , unless [1] the misrepresentation or warranty is made with actual intent to deceive, or unless [2] the matter represented increases the risk of loss.

Tenn. Code Ann. § 56-7-103.  MVFIC does not argue that it is entitled to summary judgment based on the first ground, actual intent to deceive.  Accordingly, the only issue at this stage is whether

the undisputed material facts show that the Application included any false statements that increased the risk of underlying loss.

"[D]etermining whether a particular misrepresentation increases an insurance company's risk of loss is a question of law for the court." Smith v. Tenn. Farmers Life Reassurance Co., 210 S.W.3d 584, 589 (Tenn. Ct. App. 2006). Generally speaking, a misrepresentation will be held to increase the risk of loss if the misrepresented information "naturally and reasonably influence[d] the judgment of the insurer in making the contract." Id. at 590. For example, the false omission of a prior DUI conviction has been held to be sufficient to void a life insurance policy because "persons with DUI convictions have a higher risk of . . . deaths caused by automobile accidents." Id. at 591.

MVFIC first argues that the Policy should be held to be void in light of the Application's claim that Liem never did business under any other name. MVFIC has produced filings with the Tennessee Secretary of State suggesting that Liem was formerly known as "Ivan LA Construction, Inc." (Doc. No. 38-8 at 3.) MVFIC has also produced an affidavit by MVFIC underwriter Mark Smith in which he states that "[t]he representation [in the Application] that Liem Construction had not gone by any other name deprived MVFIC of information such as previous operations and possible claims/incidents which was important to its decision to make a fair appraisal of the risk and pricing relative to the insurance coverage . . . requested." (Doc No. 38-6. at ¶ 18.) Being deprived of the mere potential to discover hypothetical relevant information, however, is not sufficient to void a policy under Tenn. Code. Ann. § 56-7-103; rather, the insurer must show that the concealed information actually "increase[d] the risk of loss." Smith does not identify actual information that MVFIC would have uncovered based on Liem's prior name that would have

increased the risk of loss under the Policy. Accordingly, even if Liem's claim that it never used other names is false, it is not sufficient to void the Policy.

Next, MVFIC relies on the Application's claim that Liem did not and would not engage in roofing work. Smith states that MVFIC does not offer policies covering roofing or re-roofing, and that, if it did, MVFIC would charge higher premiums than Liem paid. (Doc No. 38-6. at ¶ 9.) Espinoza testified in his deposition in the Underlying Proceeding that he personally had extensive prior roofing experience prior to the alleged incident at Roundtree. (Doc. No. 38-3 at 21–22.) He testified that in his work with Liem, he "[p]ractically, didn't do that much roofing work" but "just did mainly reconstruction and repairs." (Doc. No. 38-3 at 19.) He concedes, however, that Liem did do "a little bit of roofing" (id. at 36) and describes repairing roofs in the project he had performed with Jones immediately prior to the Roundtree project. (Id. at 26.)

MVFIC's argument that Liem's roofing work is sufficient to void the Policy, however, comes in conflict with its other argument on this Motion: that the Policy on its face limits its coverage to interior painting and carpentry work, excluding roofing. (Doc. No. 37 at 13–14.) If the Policy does not cover roofing, then Liem's past and future roofing work is irrelevant to the risk of liability under the policy. If anything, every working hour Liem spent on something other than interior carpentry or painting would *decrease* the risk under the Policy.

Ashler Oaks, then, finds itself between two pincers. If the Policy *does* cover roofing work, then the Application's claim that Liem had never performed roofing, if false, misrepresented a fact plainly relevant to the possibility of roofing-related liability, and VFMIC can void the policy. If the Policy *does not* cover roofing work, then the Policy's coverage does not extend to the Underlying Action and MVFIC is entitled to declaratory relief. The only way to escape a conclusion in MVFIC's favor, then, is for Ashler Oaks to rely on some factual or legal basis for

8

concluding that (1) the Application does not contain false statements about Liem's roofing history; *and* (2) the Policy covers liability based on roofing work.

Ashler Oaks has identified no support for either proposition. With regard to the falsity of the Application's roofing claims, Ashler Oaks' only non-evidentiary defense is its claim that Espinoza himself did not fill out the Application, but that it instead was filled out by MVFIC employee Barbara Verwey and presented to Espinoza to sign. "[T]he law in Tennessee . . . has been long settled," though, that a party who signs an insurance application cannot relieve himself of responsibility for falsehoods therein simply by claiming that he did not read the completed application—there is no "'I didn't read it' defense." Smith, 210 S.W.3d at 591.

Ashler Oaks attempts to overcome that well-settled law by likening this case Acuity Mutual Insurance Co. v. Frye, 699 F. Supp. 2d 975, 986–87 (E.D. Tenn. 2010), in which the Eastern District of Tennessee held that a fire insurance policy was not void due to application errors made by a third party, acting as an agent of the insurer, that arranged for the purchase of the policy. In that case, however, the insured "did not fill out, read, review, approve, *or sign* the application prepared by" the insurer's agent. Id. at 980 (emphasis added). Ashler Oaks does not dispute that Espinoza signed the Application on behalf of Liem in this case. The application in Acuity, moreover, was completed "without input" from the insured, id. at 986, whereas Espinoza has testified that he orally participated in Verwey's preparation of the Application here. (Doc. No. 38-3 at 64–65.) Generally speaking, even when an error is initially the fault of an agent of the insurer who assisted in the preparation of the application, it can still be the basis for voiding a policy "as long as [the insured] thereafter signed the application." Smith, 210 S.W.3d at 591 n.7 (citing McPherson v. Fortis Ins. Co., No. M2003–00485–COA–R3–CV, 2004 WL 1123529, at

*4–7 (Tenn. Ct. App. Jan 12, 2004)). <u>Acuity</u>, plainly distinguishable on the relevant facts, provides no ground for departing from that general rule here.

As for the scope of the Policy, Ashler Oaks offers little, if any, argument at all to defeat the plain language suggesting that it is a policy that covers liability incurred pursuant to the operation of a painting and carpentry business, not a roofing business. Accordingly, even if Ashler Oaks can overcome the preliminary question of whether the policy is void, it cannot prevail in this matter, as the only underlying case and controversy is whether MVFIC has any obligations in the Underlying Action. MVFIC's motion will therefore be granted.

## <u>CONCLUSION</u>

For the reasons discussed above, MVFIC's Motion for Summary Judgment (Doc. No. 36) will be **GRANTED** as to Ashler Oaks. Because default has been entered against Liem and Jones, the Court cannot enter judgment against those parties until requested pursuant to Fed. R. Civ. P 55(b). <u>See</u> <u>Allstate Ins. Co. v. Saph</u>, No. 13-13112, 2014 WL 1515683, at *3 (E.D. Mich. Apr. 17, 2014) ("[O]nce the Clerk of Court has defaulted a party, the plaintiff must request judgment from the Clerk of Court or file a Motion for Default Judgment with the Court, whichever is appropriate under the rule.") MVFIC will therefore be **ORDERED** to file a Rule 55(b)(2) motion for entry of default judgment with this Court within fourteen days of the issuance of the Order accompanying this Opinion.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE